**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JOSHUA JOHNSON, | |
| *Plaintiff*, | **CIVIL ACTION NO. 4:22-CV-04086** |
| v. | **JUDGE LYNN N. HUGHES** |
| AMAZON.COM, INC., et al. | |
| *Defendants*. | |

**DEFENDANT AMAZON'S MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

      A.     Amazon did not undertake to render a service to Plaintiff, regarding the Comuster bathmat, that was necessary for Plaintiff's protection. ...................... 7

           1.     Webpages generally describing Amazon's product-safety measures cannot establish an undertaking. ........................................................... 8

           2.     Plaintiff does not identify any affirmative undertaking that Amazon took regarding the Comuster bathmat. ................................... 13

      B.     Amazon's alleged undertaking did not increase Plaintiff's risk of harm or lead Plaintiff to detrimentally rely on the allegedly promised undertaking...... 14

           1.     Amazon's alleged undertaking did not increase Plaintiff's risk of harm. ................................................................................................. 15

           2.     Plaintiff did not detrimentally rely on any express promise by Amazon regarding its alleged undertaking. ......................................... 17

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen* v. *Walmart Stores, L.L.C.*,
   907 F.3d 170 (5th Cir. 2018) .............................................................................14

*Am. Honda Motor Co.* v. *Milburn*,
   No. 05-19-850-CV, 2021 WL 5504887 (Tex. App.—Dallas Nov. 24, 2021,
   pet. filed) (mem. op.) ....................................................................................12, 18

*Amazon.com, Inc.* v. *McMillan*,
   625 S.W.3d 101 (Tex. 2021)..................................................................1, 6, 10, 14

*Banzhaf* v. *ADT Sec. Sys. Sw., Inc.*,
   28 S.W.3d 180 (Tex. App.—Eastland 2000, pet. denied) ........................................9

*Bauer* v. *Gulshan Enters., Inc.*,
   617 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2020, pet. denied)........................13

*Bellum* v. *PCE Constructors, Inc.*,
   407 F.3d 734 (5th Cir. 2005) .......................................................................5, 8, 11

*Cimino* v. *Raymark Indus., Inc.*,
   151 F.3d 297 (5th Cir. 1998) .................................................................................6

*Colonial Sav. Ass'n* v. *Taylor*,
   544 S.W.2d 116 (Tex. 1976)................................................................................16

*Diaz* v. *Sw. Wheel, Inc.*,
   736 S.W.2d 770 (Tex. App.—Corpus Christi–Edinburg 1987, writ denied) ...................15, 16

*Elephant Ins. Co., LLC* v. *Kenyon*,
   644 S.W.3d 137 (Tex. 2022).............................................................8, 13, 14, 19

*Entergy Gulf States, Inc.* v. *Akrotex, Inc.*,
   40 S.W.3d 201 (Tex. App.—Beaumont 2001, no pet.) ....................................13, 14

*Entex* v. *Gonzalez*,
   94 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ............11, 17, 19

*Fort Bend Cnty. Drainage Dist.* v. *Sbrusch*,
   818 S.W.2d 392 (Tex. 1991)....................................1, 2, 6, 8, 11, 12, 17, 18, 19

*Freyer* v. *Lyft, Inc.*,
   639 S.W.3d 772 (Tex. App.—Dallas 2021, no pet.)..................................15, 17, 18

*Guillory* v. *Seaton, LLC*,
470 S.W.3d 237 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)................................9, 12

*In re Heritage Consol., L.L.C.*,
765 F.3d 507 (5th Cir. 2014) ....................................................................................................5

*Jacobs–Cathey Co.* v. *Cockrum*,
947 S.W.2d 288 (Tex. App.—Waco 1997, writ denied) .........................................................10

*Johnson* v. *Abbe Eng'g Co.*,
749 F.2d 1131 (5th Cir. 1984) ................................................................................................13

*Kuentz* v. *Cole Sys. Grp., Inc.*,
541 S.W.3d 208 (Tex. App.—Houston [14th Dist.] 2017, no pet.)....................................9, 10

*Legate* v. *Livingston*,
822 F.3d 207 (5th Cir. 2016) ..................................................................................................20

*Mack* v. *RPC, Inc.*,
439 F. Supp. 3d 897 (E.D. Tex. 2020)...............................................................................11, 12

*Mayer* v. *Willowbrook Plaza Ltd. P'ship*,
278 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2009, no pet.)........................................10

*McLennan* v. *Am. Eurocopter Corp.*,
245 F.3d 403 (5th Cir. 2001) ....................................................................................12, 13, 15

*Nall* v. *Plunkett*,
404 S.W.3d 552 (Tex. 2013).............................................................................................7, 14

*Ramming* v. *United States*,
281 F.3d 158 (5th Cir. 2001) ....................................................................................................5

*Rubinstein* v. *Collins*,
20 F.3d 160 (5th Cir. 1994) .......................................................................................................5

*Skaggs* v. *Amazon.com, Inc.*,
334 So. 3d 780 (La. Ct. App. 2021).........................................................................................16

*State of Texas* v. *Am. Tobacco Co.*,
14 F. Supp. 2d 956 (E.D. Tex. 1997) ........................................................................................8

*Torrington Co.* v. *Stutzman*,
46 S.W.3d 829 (Tex. 2000)..............................................................................1, 2, 6, 7, 14, 17

*Williford Energy Co.* v. *Submergible Cable Servs., Inc.*,
    895 S.W.2d 379 (Tex. App.—Amarillo 1994, no writ)...........................................................14

RULES

Fed. R. Civ. P. 12(b)(6)...................................................................................................................5

OTHER AUTHORITIES

Restatement (Second) of Torts § 323 (1965)...............................................................................6, 7

Restatement (Second) of Torts § 324A (1965)...............................................................................6

**INTRODUCTION**

Plaintiff Joshua Johnson claims that he was injured when he slipped on an allegedly faulty bathmat purchased from third-party seller Comuster on the Amazon.com website. His Original Complaint sought to hold Amazon strictly liable for the allegedly faulty bathmat. *See* Dkt. #1 ¶¶ 16–25. He withdrew the Original Complaint, *see* Dkt. #9, after Amazon's motion to dismiss pointed out his claim was categorically foreclosed by the Texas Supreme Court's decision in *Amazon.com, Inc.* v. *McMillan*, 625 S.W.3d 101, 112 (Tex. 2021), *see* Dkt. #7. Plaintiff now seeks to hold Amazon liable under a different theory. *See* Dkt. #8 (hereafter "Compl."). The First Amended Complaint asserts a negligent-undertaking claim against Amazon. *See* Compl. ¶¶ 54–61. It does so on the theory that, by describing its general product-safety efforts on its website and taking safety-related actions on different products in the past, Amazon undertook a duty to protect Plaintiff from the allegedly faulty Comuster bathmat. *Id.*

Plaintiff's negligent-undertaking theory is contrary to Texas case law construing the negligent-undertaking doctrine. The Texas Supreme Court has emphasized that the negligent-undertaking doctrine is a narrow exception to the rule that "Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances." *Torrington Co.* v. *Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000). And it has stressed that a defendant's voluntary efforts to increase safety "will not normally give rise to an obligation" under the doctrine. *Fort Bend Cnty. Drainage Dist.* v. *Sbrusch*, 818 S.W.2d 392, 397 (Tex. 1991). Limiting the doctrine serves an important purpose. If "an act of humanitarian assistance can become an albatross of mandatory obligation in the future," then "the natural consequence will be to discourage people from assisting others in the first instance." *Id.* at 397 n.4 (cleaned up). In other words, limiting the negligent-undertaking doctrine encourages extra efforts to promote safety.

-1-

Plaintiff's theory of liability runs headlong into the Texas Supreme Court's admonitions. It asks this Court to hold Amazon liable for acting as "an active marketplace regulator" and taking steps to increase customer safety. Compl. ¶ 13. Attaching the "albatross" of liability would send the perverse message that Texas law "discourage[s]" companies from going above and beyond what the general duty of care requires. *Sbrusch*, 818 S.W.2d at 397 n.4 (cleaned up).

General policy concerns aside, the First Amended Complaint fails to allege well-pleaded facts establishing the essential elements of a negligent-undertaking doctrine. Such a claim requires facts establishing both: (1) an actual, voluntary undertaking by Amazon to render protective services for Plaintiff, *and* (2) that Amazon's negligent performance of the undertaking harmed him by either (a) increasing the risk of injury from the bathmat, or (b) inducing him to actually rely on the undertaking in purchasing or using the bathmat. *See Torrington*, 46 S.W.3d at 838. Plaintiff has not alleged facts establishing any of these elements. For starters, the "undertaking" that Plaintiff alleges is premised on two Amazon.com webpages, which provide high-level descriptions of Amazon's general, voluntary efforts to monitor the safety of products sold on Amazon.com. Those webpages cannot be the basis for a negligent undertaking because "Texas courts … have not extended" the doctrine "to create a duty based upon corporate statements or advertising." *State of Tex.* v. *Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973 (E.D. Tex. 1997). Quite the opposite: They have repeatedly rejected similar attempts to claim a negligent undertaking based on "promotional material" or other "general and broad descriptions" of a defendant's voluntary safety measures. *Kuentz* v. *Cole Sys. Grp., Inc.*, 541 S.W.3d 208, 218 (Tex. App.—Houston [14t Dist.] 2017, no pet.). Plaintiff also cannot establish the "increased risk" or "actual reliance" elements. He does not—and cannot—allege facts explaining how Amazon's general product-safety monitoring efforts, which could not have affected the physical makeup of the bathmat, "increased the risk"

that the Comuster bathmat would shift unexpectedly. And he does not allege any facts plausibly establishing that he knew about and actually relied upon Amazon's general product-safety efforts when he purchased or used the Comuster bathmat.

Plaintiff's claim against Amazon is not legally viable and should therefore be dismissed.

## BACKGROUND

Plaintiff claims he was "severely injured" on October 21, 2022, when a non-slip bathmat shifted underneath him as he was showering, causing him to fall. *See* Compl. ¶¶ 1, 24. Plaintiff bought the bathmat on Amazon.com from a third-party seller named Comuster. *Id.* ¶ 10—11. Plaintiff acknowledges that "Comuster designed, manufactured, marketed, sold, and supplied" the bathmat. *Id.* ¶ 31. Plaintiff alleges that "[t]hrough Amazon, Comuster sold and marketed its non-slip bathmat," *id.* ¶ 4, and that he "purchased" the bathmat "through Amazon in 2022," *id.* ¶ 11.

Plaintiff sued Amazon and Comuster. *Id.* ¶¶ 2–3. The first four counts—which are brought against Comuster alone—assert claims for strict products liability, *id.* ¶¶ 26–35, negligence, *id.* ¶¶ 36–41, breach of express warranty, *id.* ¶¶ 42–47, and breach of implied warranty, *id.* ¶¶ 48–53. The remaining count is a negligent-undertaking claim (styled as negligence) against Amazon only. *Id.* ¶¶ 54–61. Specifically, Plaintiff alleges that "Amazon had voluntarily undertaken to thoroughly vet the safety and reliability of: 1) all sellers who were listing products on Amazon's website and; 2) all products being sold on Amazon's website." *Id.* ¶ 55. He also alleges that Amazon had "voluntarily undertaken to thoroughly investigate all reports of dangerous products on its website, and to protect individuals who used products purchased through Amazon by notifying them of unsafe products." *Id.* He claims that Amazon breached this purported duty in six ways by allegedly failing to vet Comuster or its products, allowing Comuster to sell a product that caused him harm, and failing to warn him about a defect in Comuster's bathmat. *Id.* ¶ 58.

Rather than point to any undertaking specific to the seller, product, or transaction at issue, Plaintiff relies on Amazon's general reputation and product-safety efforts in an attempt to establish an undertaking. He alleges that the "size and reputation of Amazon as a trustworthy online marketplace" led him to believe that "he could find a good-quality non-slip bath mat on Amazon's website that would function reliably." *Id.* ¶ 11. According to Plaintiff, he "never imagined Amazon would have allowed dangerous products like the Comuster non-slip bath mat to be available for sale on its website." *Id.* ¶ 12.

Plaintiff's allegations about Amazon's product-safety efforts are equally non-specific to the seller, product, or transaction at issue. He alleges that Amazon "undertakes to provide several safety-related services" with a "purported goal" to "fully vet the safety and reliability of not just the products being sold on Amazon's website but also the sellers whose products were being sold." *Id.* ¶ 13. However, Plaintiff does not allege a single fact showing that Amazon vets all sellers and products, nor does he explain the nature or depth of any such vetting. He instead characterizes Amazon as an "active marketplace regulator," *id.*, but identifies no facts showing such regulation or describing how such regulation would have applied to the seller and product at issue here.

The only "details" the First Amended Complaint provides regarding Amazon's alleged "voluntary undertaking" come from two webpages on Amazon.com. *See id.* ¶¶ 14–15. The first is a press release from 2019, which is a "response to a Wall Street Journal story about the safety of products offered" on Amazon.com. Ex. A at 1.[1] The 2019 Press Release provides a general overview of Amazon's "robust programs designed to ensure products offered for sale in our store are safe and compliant." *Id.* at 2. The other is an informational page titled "Amazon's Help and

---

[1] A complete copy of the 2019 Press Release referenced in the Amended Complaint, *see* Compl. ¶ 14 n.1, is attached as Exhibit A.

Customer Service." Compl. ¶ 15. The section titled "Product Safety" contains a set of five bullet points listing actions Amazon "may" take in "concerning situations" involving "product safety concerns," such as "[r]emove the product form the website." *Id.* The section titled "Recalls" generally describes Amazon's procedure when it "learn[s] of recalls" for a product, either "from manufacturers and vendors," or through "public recalls alert websites." *Id.*

The First Amended Complaint alleges no facts connecting these two webpages to the events giving rise to this lawsuit. Neither webpage mentions Comuster, the Comuster bathmat, or bathmats generally. The only product category even mentioned on the two webpages is the single reference to "toys" in the 2019 Press Release. *Id.* ¶ 14. And the Comuster bath is not, and is not alleged to be, a toy. *Id.* Plaintiff does not allege that he has ever seen these webpages—much less that he saw them before purchasing the bathmat. Nor does he describe how these pages could possibly have influenced his decision to buy the specific product at issue from a third-party seller on Amazon.com.

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is warranted if, among other things, the complaint "fails to state a legally cognizable claim." *Ramming* v. *United States*, 281 F.3d 158, 161 (5th Cir. 2001). Because this case is based on diversity jurisdiction, *see* Compl. ¶ 6, this Court "must apply Texas law as interpreted by Texas state courts." *In re Heritage Consol., L.L.C.*, 765 F.3d 507, 511 (5th Cir. 2014) (cleaned up). And in doing so, it should "not use its diversity jurisdiction to 'expand state law beyond its presently existing boundaries.'" *Bellum* v. *PCE Constructors, Inc.*, 407 F.3d 734, 742 (5th Cir. 2005) (quoting *Rubinstein* v. *Collins*, 20 F.3d 160, 172 (5th Cir. 1994)).

**ARGUMENT**

Under well-established Texas Supreme Court precedent, Amazon is not liable for defects in products sold by third parties on its website. *McMillan*, 625 S.W.3d at 112. Plaintiff tries to circumvent this clear rule by alleging that Amazon adopted a duty where none otherwise exists. His allegations fall well short of the facts necessary to establish a negligent-undertaking claim. Permitting Plaintiff to proceed on his claim would require this Court to sanction several novel expansions of the essential elements for a negligent-undertaking claim. Doing so would be contrary to the Texas Supreme Court's admonition that the doctrine must remain narrow so as to not "discourage people from assisting others in the first instance." *Sbrusch*, 818 S.W.2d at 397 n.4. And it would violate the "long followed" rule—grounded in federalism and comity—that federal courts should not expand state tort law beyond is existing boundaries, particularly in the product-liability context. *Cimino* v. *Raymark Indus., Inc.*, 151 F.3d 297, 314 (5th Cir. 1998) (cleaned up; collecting cases).

Sections 323 and 324A of the Restatement specify the limited circumstances in which an entity that has no duty may nevertheless assume one. *See, e.g.*, *Torrington*, 46 S.W.3d at 837–38. The two sections are materially identical except that section 323 addresses a direct undertaking whereas section 324A addresses an undertaking to benefit a third party. *See* Restatement (Second) of Torts §§ 323 & 324A.[2] Section 323 is the appropriate section here because Plaintiff purchased the bathmat and is claiming that Amazon assumed a duty for his protection. Section 323 provides:

---

[2] Section 324A states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

160263223.1

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

As the text of subsections (a) and (b) make plain, to survive dismissal, Plaintiff must allege and ultimately prove multiple elements. First, he must show that Amazon undertook to render services to him. Second, he must then establish one of the elements that link the undertaking to his harm. Specifically, he must demonstrate either: (1) negligence in performing the undertaking increased the risk of harm to him or (2) that the harm was caused by reliance on the undertaking. *See Torrington*, 46 S.W.3d at 838 (citing Restatement (Second) of Torts § 323 (1965)).

Plaintiff's First Amended Complaint does not allege facts that could meet any of these elements.

**A.      Amazon did not undertake to render a service to Plaintiff, regarding the Comuster bathmat, that was necessary for Plaintiff's protection.**

None of Amazon's conduct described in the First Amended Complaint qualifies as a voluntary undertaking. The Texas Supreme Court has emphasized that this is the most "critical inquiry" in assessing a negligent-undertaking claim, as it defines when a defendant's conduct "requires the imposition of a duty where one otherwise would not exist." *Nall* v. *Plunkett*, 404

---

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

S.W.3d 552, 555 (Tex. 2013).  Adopting an expansive definition of what qualifies as an "undertaking" will "discourage people from assisting others" by penalizing them with potential liability.  *Sbrusch*, 818 S.W.2d at 397 n.4.

There are just two ways a defendant can voluntarily undertake a duty to a plaintiff.  The first is when the defendant "engaged in an affirmative course of action necessary for the protection of the [plaintiff's] person or property."  *Elephant Ins. Co., LLC* v. *Kenyon*, 644 S.W.3d 137, 152 (Tex. 2022).  The second is when the defendant made "an express promise to act in the future" for the protection of the plaintiff's person or property.  *Sbrusch*, 818 S.W.2d at 398.  Neither applies here.

    1.    **Webpages generally describing Amazon's product-safety measures cannot establish an undertaking.**

Plaintiff relies heavily—almost exclusively—on two webpages on Amazon.com, which he claims "provide[] extensive details on its voluntary undertaking."  Compl. ¶¶ 14–15.  The first is the 2019 Press Release that generally describes the Product Safety Team's efforts to identify and address potentially unsafe products being sold on Amazon.com.  *Id.* ¶ 14.  The second is the "Help and Customer Service" webpage, which uses several bullet points and paragraphs to generally describe Amazon's approach to "Product Safety" and "Recalls."  *Id.* ¶ 15.  These webpages cannot support Plaintiff's claim.  "Texas courts … have not extended" the negligent-undertaking doctrine "to create a duty based upon corporate statements or advertising."  *State of Texas* v. *Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973 (E.D. Tex. 1997).  This Court—as a federal court sitting in diversity—should not break ground that the Texas courts have not.[3]  *See Bellum*, 407 F.3d at 742.

---

[3] There is an unpublished decision from this District that denied Amazon's motion to dismiss a claim asserting the same basic negligent-undertaking theory that Plaintiff brings here, with a different product.  *See* Memorandum & Order, *Williams* v. *American Crenova E-Commerce, Ltd.* No. 4:20-cv-01666 (Feb. 7, 2022), Dkt. #56.  Plaintiff appears to have literally copied his

First, the webpages that Plaintiff quotes are "promotional material" and provide only "general and broad descriptions" of Amazon's product-safety measures. *Kuentz* v. *Cole Sys. Grp., Inc.*, 541 S.W.3d 208, 218 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Texas courts have rejected "promotional materials" or "broad descriptions" as a basis for establishing an "actual undertaking," *id.*, even at the motion to dismiss stage, *e.g.*, *Guillory* v. *Seaton, LLC*, 470 S.W.3d 237, 241 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (affirming dismissal where the "petition included numerous deposition excerpts, quoted promotional material, and other evidence" of the alleged undertaking). That is true even when—unlike here—the defendant's core business is safety-related. For example, the "promotional material" for a company that "performs screening services" for employers cannot be used to establish an undertaking. *Kuentz*, 541 S.W.3d at 218; *see also, e.g.*, *Banzhaf* v. *ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 186 (Tex. App.—Eastland 2000, pet. denied) (rejecting a claim against a company that provided alarm systems, which was premised on the defendant being "in the security business to protect people and property").

For such "promotional material" or "broad descriptions" to support a negligent-undertaking claim, Plaintiff would have to allege that they were within "the specific scope of services agreed on by" Amazon and Plaintiff when he purchased the Comuster bathmat on

---

negligent-undertaking theory from the plaintiff in that case, which explains why the Amended Complaint uses "her" and "they" to refer to Plaintiff in the new allegations supporting the negligent-undertaking claim, *see* Compl. ¶¶ 12, 13, 59, but uses "he" and "his" in the allegations that were in the Original Complaint, *see id.* ¶¶ 1, 24–25. The *Williams* decision is obviously not binding on this Court. Nor is it persuasive. *Williams* was decided before multiple Texas state court decisions cited in this Motion, and *Williams* relies almost exclusively on federal district court opinions—not state court precedent—to adopt an expansive approach to negligent-undertaking claims that is fundamentally inconsistent with Texas precedents. Finally, the *Williams* court did not have the benefit of many of the arguments and authority contained in this Motion, particularly those in Part A.1.

Amazon.com. *Kuentz*, 541 S.W.3d at 218. Plaintiff has not—and cannot—allege that they were made part of the underlying contract between Amazon and Plaintiff. As the Texas Supreme Court explained in *McMillan*, "all customers must agree when making a purchase" to Amazon's Conditions of Use, pursuant to which "Amazon makes no warranties for products 'sold by' third-party merchants and disclaims responsibility for third-party product descriptions." 625 S.W.3d at 104. Thus, the broad language found in the webpages "cannot replace [Amazon's] actual undertaking" as set out in its Conditions of Use.[4] *See Kuentz*, 541 S.W.3d at 218; *see also Mayer* v. *Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 911–12 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (security company owed no generalized tort duty to victim of third-party criminal acts beyond the terms of its contract to provide security services); *Jacobs–Cathey Co.* v. *Cockrum*, 947 S.W.2d 288, 291–92 (Tex. App.—Waco 1997, writ denied) (company's internal policy of removing debris left at its work sites by other parties did not impose upon the company a negligence duty to parties injured by unremoved debris). The law is clear that promotional materials untethered to any contractual arrangement cannot create a basis for a negligent-undertaking claim. Plaintiff's attempt to argue otherwise would effectively work a categorical

---

[4] Plaintiff could not have possibly alleged that the *Conditions of Use* contains the kind of undertaking described in the First Amended Complaint. The *Conditions of Use* clearly disclaims any undertaking by Amazon regarding the safety of third-party sellers' products. It says:

> If you purchase any of the products or services offered by [third-party sellers], you are purchasing directly from those third parties, not from Amazon. We are not responsible for examining or evaluating, and we do not warrant, the offerings of any of these businesses or individuals (including the content of their Web sites). Amazon does not assume any responsibility or liability for the actions, product, and content of all these and any other third parties. You should carefully review their privacy statements and other conditions of use.

*Conditions of Use*, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM (last accessed Jan. 19, 2023).

expansion of the doctrine in Texas. *See Sbrusch*, 818 S.W.2d at 397. And that is something this Court cannot do. *See Bellum*, 407 F.3d at 742.

Second, setting aside their promotional nature, the website material that Plaintiff quotes "expresses a general commitment to [product] safety." *Mack* v. *RPC, Inc.*, 439 F. Supp. 3d 897, 902 (E.D. Tex. 2020). Texas courts have rejected attempts to turn such general policies into grounds for a negligent-undertaking claim. *Id.* at 902–03 (collecting cases). For example, a federal district court recently dismissed a negligent-undertaking claim against a parent corporation, which was premised on the parent corporation issuing a "safety policy that expresses a general commitment to 'provide a safe working environment.'" *Id.* at 903; *see also Entex* v. *Gonzalez*, 94 S.W.3d 1, 9–10 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (gas company's procedures to "inspect and warn customers about elevated water heaters and storing flammable vapors near them" did not constitute the voluntary assumption of a duty).

Finally, none of the language quoted by Plaintiff amounts to "an express promise to act in the future" regarding the Comuster bathmat. *Sbrusch*, 818 S.W.2d at 398. The 2019 Press Release, as quoted on page 5 of the Amended Complaint, says that "if a customer reports a concern with a product, a customer service associate *can* instantly trigger an investigation," and that Amazon's product-safety efforts are "*designed* to ensure products offered for sale in our store are safe and compliant." Compl. ¶ 14 (emphasis added). Similarly, the "Help and Customer Service" website—reproduced on page 6 of the Amended Complaint—says that Amazon "*may* remove the product from the website" and "*may* also report product safety concerns to applicable government agencies." *Id.* ¶ 15 (emphasis added).

These high-level descriptions of potential future actions do not amount to "a promise" that can be "breach[ed]," which is what is required for a negligent-undertaking claim based on "a

160263223.1

promise." *Sbrusch*, 818 S.W.2d at 396. "The cases that the Texas Supreme Court has cited in support of the proposition that reliance alone can transform a promise into an undertaking all involved promises to take a *specific* action in response to a *specific* danger or *specific* circumstance." *Mack*, 439 F. Supp. 3d at 904 (emphasis added); *cf. Am. Honda Motor Co.* v. *Milburn*, No. 05-19-850-CV, 2021 WL 5504887, at *18 (Tex. App.—Dallas Nov. 24, 2021, pet. filed) (mem. op.) (holding that "statements in Uber marketing materials in which Uber promises the safest possible platform for Uber riders and drivers" to be "puffery"). Webpages that list a range of possible general actions that Amazon "may" potentially take in response to unspecified "product safety concerns" lacks the requisite specificity. Compl. ¶ 15. Treating such descriptions as an actionable "promise" would be contrary to the Texas Supreme Court's indication of what qualifies as a "promise."

Plaintiff tries to characterize the webpages as having "guaranteed … the Comuster non-slip bath mat as being safe," *id.* ¶ 59, and promised "to thoroughly investigate all reports of dangerous products," *id.* ¶ 55. The webpages clearly do not make ironclad guarantees about safety or blanket promises covering all sellers and products. Texas precedent precludes Plaintiff from misconstruing written materials to maintain his negligent-undertaking claim. *See Guillory*, 470 S.W.3d at 243. So does Fifth Circuit precedent. *See McLennan* v. *Am. Eurocopter Corp.*, 245 F.3d 403, 432 (5th Cir. 2001) (rejecting a negligent-undertaking claim based on "a clearly erroneous interpretation of the documents" that allegedly described the undertaking).

The two webpages quoted in the First Amended Complaint are not a legally viable basis for Plaintiff's negligent-undertaking claim.

160263223.1

## 2. Plaintiff does not identify any affirmative undertaking that Amazon took regarding the Comuster bathmat.

Plaintiff's other allegations fail to identify "an affirmative course of action" by Amazon specific to Plaintiff and the Comuster bathmat. *Elephant Ins. Co.*, 644 S.W.3d at 152. Where a negligent-undertaking claim is based on injury from an allegedly defective product, the plaintiff must allege that the defendant undertook some affirmative action regarding that particular product—such as inspecting it or issuing warnings about it. *See McLennan*, 245 F.3d at 432; *cf. Johnson* v. *Abbe Eng'g Co.*, 749 F.2d 1131, 1133 (5th Cir. 1984) (requiring the defendant to have "undertaken to inspect the *specific* instrument causing the injury" (emphasis added; cleaned up)); *Bauer* v. *Gulshan Enters., Inc.*, 617 S.W.3d 1, 27–28 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) ("[E]vidence that Gulshan had performed other inspections of other stores in the past does not constitute evidence of an affirmative undertaking at [this particular store].")). Plaintiff alleges no such affirmative course of action here. To the contrary, he alleges that "Amazon *did nothing* to mitigate" the risk from the Comuster bathmat. Compl. ¶ 23 (emphasis added).

Indeed, none of the six bases that Plaintiff asserts for his negligent-undertaking claim amount to the kind of "affirmative course of action" that Texas courts require. *Elephant Ins. Co.*, 644 S.W.3d at 152. He alleges that Amazon "failed to properly vet Defendant Comuster," "failed to properly vet the Comuster non-slip bathmat," and "failed to properly investigate the dangerous latent condition of the Comuster non-slip bath mat [sic]." Compl. ¶¶ 58(a)–(b), (e). But the "failure to inspect" is not "affirmative action." *Entergy Gulf States, Inc.* v. *Akrotex, Inc.*, 40 S.W.3d 201, 206 (Tex. App.—Beaumont 2001, no pet.). The allegation that Amazon "failed to warn Plaintiff about the unreasonably dangerous latent condition" does not qualify. Compl. ¶ 58(f). The Texas Supreme Court has held that "not giving a safety warning is an omission, not an undertaking." *Elephant Ins. Co.*, 644 S.W.3d at 152. The other two allegations—about

"recruiting" Comuster and "allowing" it to list the bathmat—do not qualify for a different reason. Compl. ¶ 58(c)–(d).  They are commercial actions directed to Comuster, not "protective action" for the sake of the Plaintiff.  *Elephant Ins. Co.*, 644 S.W.3d at 152.  Texas precedent is clear that the "critical inquiry" into whether the defendant has engaged in an "undertaking" does not permit plaintiffs to establish a negligent undertaking by commingling the alleged protective service undertaken to the plaintiff with commercial services provided to a third party.  *Nall*, 404 S.W.3d at 555.

The general product-safety "programs" described on the two websites also do not qualify. *See* Compl. ¶¶ 14–15.  Texas courts have repeatedly held that general "policies or procedures" "d[o] not constitute affirmative acts."  *Entergy*, 40 S.W.3d at 205 (citing *Williford Energy Co.* v. *Submergible Cable Servs., Inc.*, 895 S.W.2d 379, 386 (Tex. App.—Amarillo 1994, no writ)).  At bottom, Plaintiff's allegations fail to establish that Amazon undertook any duty specific to the bathmat that was "designed, manufactured, and introduced into the stream of commerce by Defendant Comuster."  Compl. ¶ 10.  This failure alone warrants dismissal.[5]

**B.  Amazon's alleged undertaking did not increase Plaintiff's risk of harm or lead Plaintiff to detrimentally rely on the allegedly promised undertaking.**

The First Amended Complaint also fails to plausibly allege "the necessary factual predicates" of increased risk or actual reliance.  *Torrington*, 46 S.W.3d at 840; *see also Allen* v.

---

[5] The "Facts" section of the Amended Complaint also mentions Amazon's "24/7 customer service," as well as the storage, shipping, and payment processing services it offers to third-party sellers.  Compl. ¶ 16.  Plaintiff does not assert these services as a basis for his negligent-undertaking claim.  Nor could he.  The "24/7 customer service" addresses customer satisfaction, not customer safety.  *Cf. Elephant Ins. Co.*, 644 S.W.3d at 152.  And the "Fulfillment by Amazon" program is not only unrelated to safety, but also exists for the benefit of third-party sellers who use Amazon's logistics services—not customers like Plaintiff.  *See McMillan*, 625 S.W.3d at 104.

*Walmart Stores, L.L.C.*, 907 F.3d 170, 181 (5th Cir. 2018) (requiring that the "alleged assistance either induced reliance or increased Williams's risk of harm").

### 1. Amazon's alleged undertaking did not increase Plaintiff's risk of harm.

The First Amended Complaint does not allege facts establishing that Amazon's "attempts to" monitor product safety "actually increased the risk of harm to users like" Plaintiff. *McLennan*, 245 F.3d at 432. Plaintiff claims he was harmed when, because of an alleged unspecified defect, "the bath mat shifted from underneath Plaintiff, causing him to fall." Compl. ¶ 24. Accordingly, Plaintiff must allege facts establishing that Amazon's alleged undertaking increased the risk "inherent in the product" from its physical defect. *Diaz* v. *Sw. Wheel, Inc.*, 736 S.W.2d 770, 773 (Tex. App.—Corpus Christi–Edinburg 1987, writ denied). In other words, he must establish that Amazon somehow made the bathmat more prone to unexpected shifts. He has not done so. Nor could he. Such a claim would not just be implausible but outright illogical.

That conclusion is compelled by the recent decision in *Freyer* v. *Lyft, Inc.*, 639 S.W.3d 772 (Tex. App.—Dallas 2021, no pet.). There, the court rejected a negligent-undertaking claim that was premised on the contention that the rideshare company Lyft "voluntarily undertook to conduct background screenings" of drivers. *Id.* at 789. The court held that the plaintiff "cannot establish that Lyft's undertaking to perform background screenings increased her risk of harm" from the driver's (Rebecca Blaser's) allegedly reckless driving, because "we would have to conclude that conducting the background screenings increased the likelihood of Blaser being an incompetent or reckless driver, a conclusion neither the evidence supports nor is rational." *Id.* at 789–90. The same reasoning applies here. It is not "rational" to conclude that Amazon's general product-safety efforts "increased the likelihood" that the bathmat would have a defect making it more prone to shifting, *id.* at 790, so that the risk of a defect was greater than if Amazon had "never undertaken

to" monitor product safety "in the first place," *Colonial Sav. Ass'n* v. *Taylor*, 544 S.W.2d 116, 120 (Tex. 1976).

The same logic was recently applied by the Louisiana First Circuit Court of Appeals to reject a similar negligent-undertaking claim premised on Amazon's product-safety efforts. *See Skaggs* v. *Amazon.com, Inc.*, 334 So. 3d 780, 791 (La. Ct. App. 2021). The court explained that Amazon's own efforts "could not have increased Ms. Skaggs's risk of harm" from an allegedly defective battery because "[a]n increased risk means some physical change to the environment or some other material alteration of circumstances" with the battery, and Amazon's monitoring of product-safety issues obviously did not affect the physical properties of the battery such that Ms. Skaggs "was worse off than if Amazon had taken no action at all." *Id.* The same reasoning applies here.

Plaintiff wrongly conflates increased risk of harm and reliance in his sole allegation attempting to establish an increased risk of harm. *See* Compl. ¶ 60. He claims that Amazon "significantly increased Plaintiff's risk of harm because Plaintiff would never have come across the Comuster non-slip bath mat and purchased it but for its being listed and promoted as a safe product on Amazon's website." *Id.* That allegation sounds in reliance, not increased risk, because he asserts that his purchase—not the risk from the defect "inherent in the product"—was caused by Amazon's alleged undertaking to monitor product safety. *See Diaz*, 736 S.W.2d at 773 (distinguishing a "risk of" harm "inherent in the product" from "reliance" on a defendant's representations). Amazon addresses reliance in the next section. *See infra* Part B.2.

Plaintiff's other allegations fare even worse. They all claim, in some fashion, that Amazon "did nothing to mitigate th[e] danger" from the allegedly defective bathmat. Compl. ¶ 23; *see also id.* ¶¶ 58–60. But a failure to reduce the risk of harm does not make the risk "greater," which is

what differentiates a negligent-undertaking claim from a run-of-the-mill negligence claim. *See*

*Entex*, 94 S.W.3d at 10 (gas company's failure to warn customer during a service call about the

risk posed by a water heater did not support undertaking claim because the "risk of harm from the

water heater was [no] greater as a result of the service call than it had been before it").

The Texas Supreme Court has emphasized that the "factual predicates" for negligent-

undertaking claim are distinct from, and more demanding than, a general negligence claim. *See*

*Torrington*, 46 S.W.3d at 838. Plaintiff cannot satisfy the increased-risk-of-harm element by

conflating it with the ordinary proximate cause required for general negligence—which is what

the Amended Complaint does.

**2.      Plaintiff did not detrimentally rely on any express promise by Amazon regarding its alleged undertaking.**

The First Amended Complaint also fails to allege facts plausibly establishing "actual

reliance by" Plaintiff on Amazon's product-safety programs in purchasing the Comuster bathmat.

*Entex*, 94 S.W.3d at 10. Specially, it fails to demonstrate facts plausibly establishing that he had

"knowledge … of an express promise" by Amazon that he actually relied on to his detriment when

purchasing or using the Comuster bathmat. *Sbrusch*, 818 S.W.2d at 398.

Plaintiff makes the kind of "conclusory" allegations that Texas courts have held cannot

establish "actual reliance" for a negligent-undertaking claim. *Freyer*, 639 S.W.3d at 790. In

*Freyer*, the plaintiff claimed that Lyft's policy of running "background screenings" and "ongoing"

screenings of drivers supported her negligent-undertaking claim. *Id.* at 789, 791. The Court of

Appeals held that she had not established actual reliance because she merely "stated she chose to

ride with Lyft because 'they advertised themselves as a "Safe" option and that they "Go the extra

mile for safety."'" *Id.* at 790. The court emphasized that she "did not identify any specific

advertisement" about safety, or recount visiting Lyft's "website prior to the accident" and learning about its "screenings prior to choosing Lyft."  *Id.*

Plaintiff's allegations are just as, if not more, conclusory than in *Freyer*.  Like the plaintiff in *Freyer*, he does not claim to have ever read either of the webpages that allegedly outline the "voluntary undertaking," much less that he read them prior to purchasing the Comuster bathmat and relied on them.  Compl. ¶ 14; *see also id.* ¶¶ 54–61.  Plaintiff merely describes, in the most general and conclusory terms, that he relied on Amazon's "image as a safe and trustworthy company" and therefore "never imagined Amazon would have allowed dangerous products … for sale on its website."  *Id.* ¶ 12.  He also makes the even more conclusory allegation that he would not have purchased the Comuster bathmat "but for its being listed and promoted as a safe product on Amazon's website," without explaining how it was "promoted" or the role this unspecified "promot[ion]" played in his purchase.  *Id.* ¶ 60.  He also asserts that he "trusted Amazon had confirmed the reliability of Defendant Comuster and the safety of the Comuster non-slip bath mat" when he purchased it.  *Id.* ¶ 59.  But he alleges no facts explaining what those confirming actions were, much less facts establishing that he had "any knowledge" of those unspecified actions by Amazon at the time of his purchase.  *Sbrusch*, 818 S.W.2d at 398.  What's more, these allegations boil down to an assertion that Plaintiff "put [his] faith in [Amazon], believing it was safe because they market themselves in that way," which is mere "puffery," not an actionable promise.  *Am. Honda Motor Co.*, 2021 WL 5504887, at *18.

Plaintiff also asserts that he "would not have used the non-slip bath mat on the day he was injured if he had been alerted to the non-slip bath mat's danger."  Compl. ¶ 60.  This is just a boilerplate failure-to-warn claim.  It does not identify any affirmative representation on which Plaintiff might have relied when using the bathmat, much less establish that he actually relied on

such a representation.  And the Texas Supreme Court has made clear that simply "not giving a safety warning" cannot support a negligent-undertaking claim.  *Elephant Ins. Co.*, 644 S.W.3d at 152.

In opposing Amazon's motion, Plaintiff might try to claim reliance based on Amazon's "history of monitoring the safety of the products on its website."  Compl. ¶ 18.  The Amended Complaint cites a June 2021 recall of "children's sleepwear garments" offered by a different third-party seller.[6]  *Id.*  It also invokes Plaintiff's unspecified "previous experiences" with Amazon and its "robust communication system."  *Id.* ¶ 12.  But the Texas Supreme Court has squarely held that "[p]ast voluntary acts do not entitle the benefitted party to expect assistance on future occasions, at least in the absence of an express promise that future assistance will be forthcoming."  *Sbrusch*, 818 S.W.2d at 397 n.4.  Plaintiff does not identify any actual "assistance" with product safety that he received from Amazon in the past.  And as explained above, *supra* at 11–12, there was no such express promise by Amazon to provide such "assistance" to Plaintiff in the future.

Permitting Plaintiff to claim actual reliance based on the kind of generalized assertions in the First Amended Complaint "would effectively operate to eliminate th[e] reliance requirement."  *Entex*, 94 S.W.3d at 10.  It would amount to authorizing a kind of "constructive reliance," *id.*, as plaintiffs could always allege—based on their past experiences with a defendant company and language plucked from its website describing its general efforts to account for its customers' safety—that "they believed" the company's services or products "would be more reliable" than

---

[6] Plaintiff cannot claim reliance based on past recalls of other products for another reason.  Amazon's recall efforts are based on product recalls issued by regulatory agencies, as well as "directly from manufacturers and vendors."  Compl. ¶ 15 p.6.  Plaintiff does not allege that there was any such recall for the Comuster bathmat.

those of other companies.  Compl. ¶ 59.  Such an approach would eviscerate the clear limits that Texas courts have placed on the negligent-undertaking doctrine.

## CONCLUSION

Plaintiff has not pleaded a viable negligent-undertaking claim.  The Court therefore should dismiss his claim against Amazon.  Because Plaintiff has already amended his complaint, and the negligent-undertaking theory has "substantive flaws" that render it nonviable under Texas law, this dismissal should be with prejudice.  *Legate* v. *Livingston*, 822 F.3d 207, 212 (5th Cir. 2016).

Dated:  January 23, 2023

Respectfully submitted,

/s/ *Gregory F. Miller*
Gregory F. Miller (Attorney-in-Charge)
Texas Bar No. 24088062
Federal I.D. No. 3607579
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Tel: 206.359.8000
Fax: 206.359.9000
GMiller@perkinscoie.com

*Attorney for Defendant Amazon.com, Inc.*

160263223.1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 23, 2023 to all counsel of record, via the Court's CM/ECF system.

Cesar Tavares
Bar No. 2572168
Alma J. Reyes
Bar No. 1054792
Michael Samaniego
Bar No. 3782332
8441 Gulf Frwy, Suite 600
Houston, TX 77017
(713) 230-2200
tavareslitteam@whlaw.com

*Attorneys for Plaintiff*

*/s/Gregory F. Miller*
Gregory F. Miller

160263223.1