IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHISN DISTRICT OF TEXAS

| | |
|---|---|
| JOSHUA JOHNSON, ) | |
| ) | |
| PLAINTIFF, ) | CIVIL ACTION NO. 4:22-cv-4086 |
| ) | |
| v. ) | |
| ) | JUDGE LYNN N. HUGHES |
| COMUSTER AND AMAZON, INC., ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

**PLAINTIFF'S RESPONSE TO AMAZON'S RULE 12(B)(6) MOTION TO DISMISS**

TO THIS HONORABLE COURT:

COMES NOW Plaintiff Joshua Johnson (Plaintiff) and files this, his Response to Amazon's Rule 12(B)(6) Motion to Dismiss, and in support thereof would show the Court as follows:

### I. ARGUMENTS & AUTHORITIES

To survive a [Rule 12(B)(6)](#) motion to dismiss, a complaint does not need to make detailed allegations, it only needs to provide enough facts that—when assumed to be true—raise a plaintiff's right to relief above pure speculation. *[Cuvillier v. Sullivan, 503 F.3d 397, 401 (5th Cir. 2007)](#)*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). That is, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *[Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)](#)* (quoting *[Twombly, 550 U.S. at 570](#)*) (citations omitted). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Amazon is liable for the misconduct alleged." *Id.* (citing *[Twombly, 550 U.S. at 556](#)*). The court must view the facts listed in the complaint in the light most favorable to the

plaintiff. *Id.* The court should not evaluate the merits of the allegation, but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). **To that end, "motions to dismiss under Rule 12(B)(6) are viewed with disfavor and are rarely granted."** *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009).

In this case, Plaintiff has alleged a claim of negligent undertaking against Amazon Amazon.com Inc. (Amazon), which the Fifth Circuit has long recognized as a valid theory of liability. *Johnson v. Abilene Christian Univ.*, No. 1:20-CV-073-H, 2020 U.S. Dist. LEXIS 257301, at *32 (N.D. Tex. 2020). To prevail on this cause of action, a plaintiff must show: 1) the Amazon undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; 2) the Amazon failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied on the Amazon's performance, or (b) the Amazon's performance increased the plaintiff's risk of harm. *Nall v. Plunkett*, 404 S.W.3d 552, 555-56 (Tex. 2013).

Amazon asserts by its present Motion that Plaintiff has failed to state a legally cognizable claim of negligent undertaking in his First Amended Complaint (Complaint) because his Complaint does not contain any facts supporting the contentions that:

1. Amazon undertook to render a service to Plaintiff, regarding the Comuster bathmat, that was necessary for Plaintiff's protection.

2. Amazon's negligence in performing that undertaking increased Plaintiff's risk of harm or lead Plaintiff to detrimentally rely on the allegedly promised undertaking.

Plaintiff's Complaint contains more than enough facts to withstand a 12(B)(6) challenge, as it alleges in extensive detail how Plaintiff sustained severe injuries because Amazon—who has openly admitted to having voluntarily undertaken to regulate the safety of all third-party sellers and products on its website—not only completely failed to address or warn about the known dangers posed by the Comuster bathmat and their defective bathmat, but actively recruited these

dangerous Chinese vendors and products for Amazon's website, thereby exposing Plaintiff to dangers he never would have encountered but for Amazon's own actions. For all of these reasons, Amazon's Motion fails in its entirety and must be denied as a matter of law.

**A. Plaintiff's Complaint clearly alleges that at all times relevant to Plaintiff's claim, and as part of Amazon's concerted effort to distinguish itself from its business competitors, Amazon had voluntarily undertaken to continuously and proactively vet and monitor the safety and reliability of all third-party sellers and products listed on its website, including Defendant Comuster and the bathmat Plaintiff ultimately purchased, for the express benefit of all individuals who wanted to obtain a product through Amazon, including Plaintiff.**

Plaintiff's Complaint opens its discussion of Amazon's voluntary undertaking by giving an overview of the economic environment in which Amazon operates. With retail rivals building their own online marketplaces, Amazon has sought to distinguish itself from its competitors—many of whom have historically maintained a hands-off approach to their websites—by intentionally taking on the role of an active marketplace regulator for its website, employing a slew of "sales-enhancing services for the benefit of individuals who use products purchased through Amazon's website." Dkt. 8 at 3. These services included concerted efforts by Amazon "to fully vet the safety and reliability of not just the products being sold on Amazon's website, but also the sellers whose products were being sold." Dkt. 8 at 3. Specific examples were cited directly from Amazon's own website, which publicly proclaims:

- "Our proactive measures begin when a seller attempts to open an account. Our new seller account vetting includes a number of verifications and uses proprietary machine learning technology that stops bad actors before they can register or list a single product in our store." Dkt. 8 at 4.

- "We have a dedicated global team of compliance specialists that review submitted safety documentation, and we have additional qualification requirements that sellers must meet to offer products." Dkt. 8 at 4.

- "All products offered in our stores must comply with […] our own policies." Dkt. 8 at 4.

- "Amazon monitors the products sold on our website for product safety concerns. In concerning situations, we may remove the product from the website, reach out to sellers and […] place relevant warnings on the product detail page…" Dkt. 8 at 4.

- "Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern. Every few minutes, our tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly." Dkt. 8 at 4 –5.

- "In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic […] and we have developed, and continuously refine and improve, our tools that prevent suspicious, unsafe, or non-compliant products from being listed in our store." Dkt. 8 at 5.

In order to downplay its own statements, which clearly demonstrate that Amazon undertook to provide safety-related services to customers, Amazon argues that "no Texas court has extended a cause of action under this section of the Restatement to create a 'duty' based only on an ***advertisement***." Dkt. 10 at 2 (citing *State of Tex.* v. *Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973 (E.D. Tex. 1997) (emphasis added)). However, it is clear that the statements above are beyond "promotional material" and "general and broad descriptions" of Amazon's voluntary safety measures, as Amazon disingenuously argues. Dkt. 10 at 2. Rather, Amazon has **"invested over $400 million to protect. . . [its] customers"** and **"proactive[ly]"** ensures product safety, including vetting sellers, scanning product listings, analyzing reviews, investigating safety issues, and notifying customers when problems were identified. Dkt. 10 at 2 (emphasis added). Notably, the vetting and monitoring program described above is not, by Amazon's own words, limited to any specific category or type of product/seller. To the contrary, it is a global program: if it's a third-party seller on Amazon's website, then Amazon has vetted them; if it's a product on Amazon's website, then Amazon constantly monitors and analyzes its safety. The vendors of the bathmat

which injured Plaintiff (Comuster) were third-party sellers on Amazon's website; the bathmat was a product purchased through Amazon's website. Thus, based on Amazon's own statements, Amazon vetted Comuster, and Amazon had been monitoring and analyzing the safety of their bathmat at all relevant times. The global program that constituted Amazon's voluntary undertaking plainly applied to the specific bathmat and the sellers involved in Plaintiff's incident, without any need for further explanation in Plaintiff's Complaint.

Nevertheless, Plaintiff's Complaint does go on to allege in specific detail that Amazon's program applied to the exact product and sellers at issue. For instance, the Complaint quotes Amazon's website as stating, "**All products** offered in our stores must comply with […] our own policies" that "products offered are safe, compliant, and authentic." Dkt. 8 at 4 (emphasis added). Additionally, the Complaint includes a user review warning about the bathmat's dangerous nature, and it was these very user reviews that Amazon has claimed to "continuously scan" and analyze as part of its safety program. Dkt. 8 at 4. Finally, the Complaint plainly states:

> "Amazon had also voluntarily undertaken to thoroughly investigate all reports of dangerous products on its website, and to protect individuals who used products purchased through Amazon by notifying them of unsafe products. These services were undertaken by Amazon for the benefit of all individuals who used products that had been purchased through Amazon's website, including Plaintiff.
>
> …Amazon had voluntarily undertaken to fully vet the safety and reliability of the Comuster Non-slip before it was listed on Amazon's website. Amazon had also voluntarily undertaken to investigate the dangerous latent condition of the Comuster non-slip bath mat once it was reported by a user, and Amazon was aware of the dangerous condition that injured Plaintiff well before the Comuster non-slip bath mat was purchased. Finally, Amazon had voluntarily undertaken to protect Plaintiff from the Comuster non-slip bath mat by recalling, removing, or barring the Comuster Non-slip bath mat from Amazon's website or by warning or otherwise notifying Plaintiff about the unreasonably dangerous nature of the Comuster Non-slip bath mat."

Dkt. 8 at 13 –14.

Amazon correctly points out that "the most critical inquiry" in assessing a negligent-

undertaking claim, is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist. Dkt. 10 at 7–8 (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). Here, Amazon made promises regarding its product safety efforts that covered all of its products, including the Comuster bathmat. "Amazon can hardly claim that by promising to investigate all of its products, it functionally promised to investigate none of them." *See* Memorandum & Order, *Williams v. American Crenova E-Commerce*, Ltd. No. 4:20-cv-01666 (Feb. 7, 2022) (attached as **Exhibit A**).

The cases cited by Amazon in its motion—i.e., *Ente* and *Entergy*—are similarly distinguishable and inapposite to the present case. None of the defendants in any of those cases had actually undertaken to perform the services about which the plaintiffs were complaining. For example in *Entex v. Gonzalez*, 94 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2002), the courts holding that Entex undertook no duty was predicated on the fact that the company's internal procedures concerned unrelated third-party appliances. Here, by contrast, Amazon facilitated the sale of the bathmat at issue. And Amazon made external promises regarding its product-safety efforts. In *Entergy Gulf States, Inc. v. Akrotex, Inc.*, 40 S.W.3d 201, 206 (Tex. App.—Beaumont 2001), a breach of contract case, the court held that the defendant's internal policies or procedures did not established a tort duty on the part of the defendant because such policies or procedures did not constitute affirmative action. It is crucial to note that neither this court nor other courts have declared that internal policies or procedures can never be considered as an affirmative act, as Amazon misleadingly states. Further, the court in *Entergy* found that the policies that the plaintiff relied on to establish a duty as to affirmative actions were not related to the defendants action in question. *Id.*

In contrast, this case clearly involves an affirmative act: Amazon actively conducted a

vetting and monitoring program that was purportedly being carried out every second of every day. Such "proactive" behavior, as Amazon itself has characterized its efforts, can hardly be cast as an outright failure to act, a general reputation, or some ignored internal policy never put into effect. Based on all of the foregoing, there are abundant facts supporting the first element of negligent undertaking. Therefore, this portion of Amazon's Motion fails as a matter of law.

   B. **Plaintiff's Complaint also asserts that Plaintiff knew about Amazon's vetting and monitoring program based on his experience using Amazon, and Plaintiff relied upon Amazon to use reasonable care in performing those services when he bought Defendant Comuster's bathmat sold through Amazon. Unaware of the dangers posed by the Defendant Comuster and their bathmat, Plaintiff suffered a serious injury in an event that would never have happened if Plaintiff hadn't relied upon Amazon.**

As to the last element challenged by Amazon, Plaintiff's Complaint alleges the following facts:

- Given the size and reputation of Amazon as a trustworthy online marketplace, Plaintiff believed he could find a good-quality non-slip bath mat on Amazon's website that would function reliably.
  See Dkt. 8 at 3.

- Through his previous experiences using their Amazon accounts to purchase products on Amazon's website, Plaintiff was familiar with the robust communication system Amazon maintained with its account holders and believed that if Amazon ever learned the Comuster Non-slip bath mat was dangerous, then Amazon would conduct a prompt and thorough investigation of that product and, when appropriate, send a similar alert to purchasers of that product and/or completely remove the product from its listings.
  See Dkt. 8 at 3.

- Plaintiff relied upon Amazon to perform the above-described safety-related services because Plaintiff would not have purchased the Comuster non-slip bath mat through Amazon if they had known Amazon was not the safe and reliable marketplace it put itself out to be. Plaintiff purchased the Comuster Non-slip bath mat because they believed it would be more reliable than other non-slip bath mats because it was sold on Amazon's website. Amazon guaranteed and promoted the Comuster non-slip bath mat as being safe and lulled Plaintiff—who was unaware it was coming from an unreliable Chinese manufacturer—into a false sense of security. Plaintiff trusted Amazon had confirmed the reliability of Defendant

> Comuster and the safety of the Comuster non-slip bath mat when they purchased
> and used the Comuster non-slip bath mat.
> Dkt. 8 at 14 –15

In sum, Plaintiff had relied upon Amazon to properly vet and monitor the vendors and products on its website, an important safety-related service Plaintiff both knew Amazon had undertaken to provide for the benefit of people like Plaintiff based on his experience as a user of Amazon's website. Plaintiff's reliance on Amazon to use reasonable care in performing these services, and Amazon's failure to do so, led to Plaintiff purchasing and unwittingly using the defective bathmat.

As the comments to Section 324A explain, reliance is found when someone is induced "to forgo other remedies or precautions against such a risk." [Restat 2d of Torts, § 324A](#) cmt. e. Plaintiff decided to forego the option of purchasing bathmats through other companies and took no additional precautions to verify the safety of the bathmat or the reliability of the Defendant Comuster because Plaintiff and his son believed Amazon had thoroughly assessed both before allowing the product to be listed on its website. Amazon is thus much like the watchman asleep at his post – an illustration provided in Section 324A's own discussion of reliance:

> "A Railroad Company employs B as a watchman at its crossing, to give warning to the public of approaching trains. B goes to sleep in his shanty, and fails to warn of the approach of the train. C, an automobile driver who knows of the usual presence of the watchman, approaches the crossing and, receiving no warning, drives onto the track and is struck and injured by the train. B is subject to liability to C."

[Restat 2d of Torts, § 324A](#), cmt. e(5).

Given all of the foregoing, Plaintiff's Complaint pleads more than enough facts to establish a plausible negligent-undertaking claim. Under the limited scope of a 12(b)(6) inquiry, this Court must therefore deny Amazon's Motion in its entirety.

## II. CONCLUSION

Plaintiff's Complaint clearly alleges that: 1) Amazon had voluntarily undertaken to continuously and proactively vet and monitor the safety and reliability of all third-party sellers and products listed on its website, including the Defendant Comuster and the bathmat Plaintiff ultimately purchased, for the express benefit of Plaintiff; and 2) Plaintiff knew about Amazon's vetting and monitoring program based on his experience using Amazon, and Plaintiff relied upon Amazon to use reasonable care in performing those services when he switched from buying bathmats at other stores to the Defendant Comuster' bathmat sold through Amazon, but suffered a terrible injury in an event that would never have happened if Plaintiff hadn't relied upon Amazon. Under the limited scope of a 12(b)(6) inquiry, the facts in Plaintiff's Complaint are more than sufficient to defeat Amazon's Motion. WHISEFORE PREMISES CONSIDERED, Plaintiff respectfully requests that this Court deny Amazon's Rule 12(B)(6) Motion to Dismiss, and grant Plaintiff any other and further relief to which he may be entitled.

Respectfully submitted,

**WILLIAMS HART & BOUNDAS, LLP**

By: */s/ Michael A. Samaniego*
    Cesar Tavares
    State Bar No. 24093726
    Alma J. Reyes
    State Bar No. 24064392
    Michael Samaniego
    State Bar No. 24115715
    8441 Gulf Frwy, Suite 600
    Houston, Texas 77017-5001
    (713) 230-2200- Telephone
    (713) 643-6226- Facsimile
    tavareslitteam@whlaw.com - E-Service Email

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that on February 13, 2023, a true and correct copy of the foregoing was electronically filed with Clerk of the Court using the CM/ECF system. I further certify that the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/EC participants.

    */s/ Michael Samaniego*
    Michael Samaniego