# EXHIBIT A

United States District Court
Southern District of Texas
**ENTERED**
February 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRISE WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-01666 |
| | § | |
| AMERICAN CRENOVA E-COMMERICE | § | |
| LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court is the Motion to Dismiss filed by Defendant Amazon.com, Inc. ("Amazon"). (Doc. 50). On February 2, 2022, the Court held a hearing on the Motion and took it under advisement. Now, for the reasons set out below, the Court **DENIES** the Motion.

## I.      BACKGROUND

Plaintiff Patrise Williams alleges the following narrative in her Fourth Amended Complaint ("Complaint"). The Blusmart Defendants (Defendants American Crenova E-Commerce Ltd. ("American Crenova"), Shenzhen Rui Chen Dian Zi Shang Wu You Xian Gong Si ("RCUS"), and Dong Guan City Sinoshine Technology Co., Ltd. "Blusmart") designed and manufactured the Blusmart Soft Heating Pad, Model: HP74A-3060. (Doc. 47 at ¶¶ 9–10.) Williams previously used electric heating pads from Walmart but felt that those pads were cheap and unreliable. (*Id.* at ¶ 12.) "[Williams] and her son believed they could find a better-quality heating pad on Amazon's website[.]" (*Id.*) Consequently, Williams' son bought the Blusmart heating pad for her through Amazon in 2018. (*Id.* at ¶ 11.) On July 21, 2019, during typical use, the heating pad's electrical

1

component grew incredibly hot. (*Id.* at ¶ 27.) Williams sustained serious burns near her right hip, which resulted in a four-day hospital stay, surgical intervention, and significant scarring. (*Id.*)

 Williams' Complaint also contains allegations about Amazon. Williams asserts that Amazon "voluntarily undertakes to provide a number of safety-related services for the benefit of individuals who use products purchased through Amazon's website." (*Id.* at ¶ 14.) Williams says that she and her son "never imagined Amazon would have allowed dangerous products like the Blusmart Heating Pad to be available for sale on its website[,] . . . [b]ecause Amazon had heavily promoted its own image as a safe and trustworthy company." (*Id.* at ¶ 13.) Williams also discusses how her experience with Amazon's communication and alert systems indicated that if Amazon learned that the pad was dangerous, it would investigate, alert her, and/or remove the product from its store. (*Id.*) To bolster this assertion, Williams points to a post that Amazon published on its website in 2019. (*Id.* at ¶ 15.) That post describes Amazon's $400-million investment in "proactive measures . . . to ensure products offered are safe, compliant, and authentic." (*Id.*) Those measures include efforts to vet sellers, require safety documentation, scan existing product listings for concerning updates, investigate troubling reports, and notify customers of potential safety issues. (*Id.*) Williams also points to a screenshot from Amazon's website that further details Amazon's product safety and recall efforts. (*Id.* at ¶ 16.)

 In addition, Williams notes that, "[b]eginning in 2013, Amazon aggressively recruited Chinese manufacturers and merchants in Shenzhen (the city where the Blusmart Defendants are located) to sell products to Amazon's U.S.-based consumers." (*Id.* at ¶ 20.) Williams says that "Amazon was aware that their Chinese sellers represented a significantly high proportion of the problem listings found on Amazon's website[,] . . . [but] U.S. consumers were kept in the dark about these unreliable Chinese manufacturers[.]" (*Id.* at ¶¶ 21–22.) Finally, Williams contends that

Amazon was on notice of the unreasonably dangerous nature of the heating pad because of a review posted on Amazon's website on January 7, 2019. (*Id.* at ¶¶ 24–25.) The review stated that the control module of a Blusmart Heating Pad became extremely hot and burned the user. (*Id.*)

## II.    PROCEDURAL HISTORY

Williams' original complaint asserted claims of strict liability, negligence, and breach of warranty against the Blusmart Defendants, along with a claim of strict liability against Amazon. (Doc. 1.) After Williams filed suit, the Fifth Circuit considered whether Amazon qualified as a "seller" of products sold by third parties on its website. *McMillan v. Amazon.com, Inc.*, 983 F.3d 194 (5th Cir. 2020). Because that issue was dispositive for Williams' strict liability claim against Amazon, the Court stayed this case pending the Fifth Circuit's decision. (Minute Entry, 12/02/2020.) The Fifth Circuit ultimately certified the question to the Texas Supreme Court, which held that Amazon is not a "seller" of products sold by third parties under Texas tort law. *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 112 (Tex. 2021).

Following that decision, Williams amended her complaint to replace her strict liability claim against Amazon with a negligent undertaking claim. (Doc. 37.) Amazon moved to dismiss based on two theories: (1) Williams' negligent undertaking claim was barred by the two-year statute of limitations; and (2) Williams' Third Amended Complaint failed to state a plausible claim. (Doc. 38.) The Court granted Amazon's Motion based on the second theory and dismissed Williams' negligent undertaking claim without prejudice. (Minute Entry, 10/26/2021). Williams subsequently filed her Fourth Amended Complaint. Amazon now moves to dismiss once more.[1]

---

[1] Amazon does not reassert its statute-of-limitations defense in this Motion. Instead, Amazon says that it takes the Court's grant of leave to replead as an implicit denial of that defense and preserves the defense for a later summary-judgment motion or appeal. (Doc. 50 at 3 n.1.)

III.    STANDARD OF REVIEW

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a 12(b)(6) motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

IV.    ANALYSIS

Jurisdiction in this case is based on diversity of citizenship, so the Court is bound to apply Texas law to Williams' negligent undertaking claim. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Texas law, to plead a negligent undertaking claim Williams must show: "(1) [Amazon] undertook to perform services that it knew or should have known were necessary for [her] protection, (2) [Amazon] failed to exercise reasonable care in performing those services, and either [(3a)] [Williams] relied upon [Amazon's] performance, or [(3b)] [Amazon's] performance increased [her] risk of harm." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000)

4

(emphasis added).[2]  Amazon argues that Williams fails to plausibly plead (1) an undertaking, (3a) reliance, and (3b) an increased risk of harm. The Court disagrees.

A.      Did Amazon Undertake to Render Williams Services for Her Benefit?

Amazon makes two arguments regarding the first prong of the negligent undertaking inquiry. First, Amazon contends that Williams "does not allege that Amazon undertook a duty specific to her, the seller, or the heating pad at issue." (Doc. 50 at 7.) Second, Amazon submits that Williams fails to allege a sufficiently affirmative course of conduct. Amazon believes that both arguments are fatal to Williams' claim. Amazon's contentions are unmeritorious.

The Court begins with Amazon's first contention. In Texas, "a person's duty to exercise reasonable care in performing a voluntarily assumed undertaking is limited to that undertaking, and will not normally give rise to an obligation to perform additional acts of assistance in the future." *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 397 (Tex. 1991). Amazon extrapolates from this principle to argue that Williams' claim fails because she does not "allege[] facts demonstrating an undertaking as to the heating pad that her son purchased." (Doc. 50 at 9.) Amazon analogizes to *Martinez-Garcia v. FCA US LLC*, where the district court dismissed a negligent undertaking claim because "all of the alleged 'undertakings' . . . involve[d] model year 1993 to 2004 Jeep *Grand* Cherokees, yet [the car in question was] a model year 1998 Jeep Cherokee." 2019 WL 7763842, at *5 (E.D. Tex. May 28, 2019). Amazon requests that that Court follow in *Martinez-Garcia*'s footsteps and hold that Williams' claim cannot proceed without allegations specifically tying Amazon's product safety efforts to the Blusmart heating pad.

---

[2] This formulation mirrors Section 324A of the Restatement (Second) of Torts, which Texas has adopted for third party liability. *Morris v. Aircon Corp.*, 2017 U.S. Dist. LEXIS 105185, at *8 (E.D. Tex. 2017)

Amazon's interpretation is far too blinkered. Williams pleads that "Amazon voluntarily undertakes to provide a number of safety-related services for the benefit of individuals who use products purchased through Amazon's website." (Doc. 47 at ¶ 14.) Williams then cites from a 2019 website post in which Amazon said: "In 2018 alone, we invested over $400 million to protect our store and our customers and built robust programs to ensure products offered are safe, compliant, and authentic." (*Id.* at ¶ 15.) In that post, Amazon also described its "proactive measures" to ensure product safety, including vetting sellers, scanning product listings, analyzing reviews, investigating safety issues, and notifying customers when problems were identified. (*Id.*) Amazon also declared that its product safety efforts extended to all the products in its store: "All products offered in our stores must comply with . . . our own policies. . . . Once a product is available in our store, we continuously scan our product listings and updates to find products that might present a concern." (*Id.*) This case is quite unlike *Martinez-Garcia*, then, where the plaintiff could only demonstrate an undertaking for a different product. Here, Amazon made promises regarding its product safety efforts that covered all of its products, including the Blusmart heating pad. Amazon can hardly claim that by promising to investigate all of its products, it functionally promised to investigate none of them. Based on these allegations, then, Williams plausibly alleges that Amazon undertook to provide product safety services for the heating pad to Williams.

Amazon, meanwhile, attempts to buttress its approach with cases such as *Entex, A Div. of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1 (Tex. App. 2002). In *Entex*, the plaintiffs brought several claims against Entex, their gas supplier, including one for negligent undertaking based on the supplier's voluntary policy of inspecting appliances for unsafe conditions. *Id.* at 9. The court held that Entex's internal procedures did "not create a negligence duty where none would otherwise exist[,] . . . [so] an undertaking did not arise from Entex's internal procedures." *Id.* Based

on *Entex*, Amazon argues that its internal procedures similarly did not create any duty to Williams. But this case is not like *Entex*. Entex was simply the gas supplier: the company did not install, own, or control the water heater at issue. *Id.* at 6. Consequently, the court's conclusion that Entex undertook no duty was predicated on the fact that the company's internal procedures concerned unrelated third-party appliances. *Id.* at 9–10. Here, by contrast, Amazon facilitated the sale of the heating pad at issue. And Amazon made external promises regarding its product-safety efforts. Thus, Amazon's alleged undertaking concerned a product within its purview. *Entex* and its ilk are therefore distinguishable, and Amazon's first argument falls short.

Amazon's second argument, meanwhile, stems from the principle that "a negligent undertaking requires action; it cannot be predicated on an alleged failure to act[.]" (Doc. 50 at 9.) Amazon contends that Williams' Complaint violates this principle because it alleges that:

> Amazon did nothing to mitigate [the purported] danger by: 1) properly vetting the Blusmart Defendants before listing their products on Amazon's website; 2) properly vetting the Blusmart Heating Pad before listing it on Amazon's website; 3) recalling, removing, or barring the Blusmart Heating Pad from Amazon's website, or; 4) warning or otherwise notifying Plaintiff and her son about the unreasonably dangerous nature of the Blusmart Heating Pad.

(Doc. 47 at ¶ 26.) But this "did nothing" language does not indicate a failure to act. Consider *Thornton v. Henkels & McCoy, Inc.*, 2013 WL 5676026 (Tex. App. Oct. 17, 2013). In that case, the plaintiff claimed that the defendant was liable for failing to fix a low-hanging communication cable. *Id.* at *3. But the defendant did not work on the cable before the plaintiff's injury and was not authorized to fix it. *Id.* The court therefore concluded that the plaintiff failed to show an "affirmative course of action undertaken by [the defendant] for [the plaintiff's] benefit." *Id.* Here, by contrast, Williams alleges that Amazon affirmatively undertook "to fully vet the safety and reliability of the Blusmart Defendants . . . [and] the Blusmart Heating Pad before [the product] was listed on Amazon's website." (Doc. 47 at ¶ 52.) Indeed, Amazon explicitly stated that it spent $400

7

million in 2018 on "proactive measures" to keep its customers safe. (*Id.* at ¶ 15 (emphasis added).) This case is therefore distinguishable from the "failure to act" cases that Amazon cites. *See Entergy Gulf States, Inc. v. Akrotex, Inc.*, 40 S.W.3d 201, 206 (Tex. App. 2001) (distinguishing a failure-to-act case from *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955), which determined that the Coast Guard could be liable for failing to service a light where the Coast Guard, in its discretion, initially decided to operate the light and so engendered reliance thereon). Amazon's product-safety efforts count as an affirmative course of action.

Writ large, then, Amazon's two arguments regarding the first prong of the negligent-undertaking inquiry are unavailing. Williams' Complaint plausibly indicates that Amazon owed her a duty by undertaking to perform services necessary for her protection.

### B.    Did Williams Rely on Amazon's Performance of Services?

Next, Amazon argues that Williams did not rely on any undertaking. Again, the Court disagrees with Amazon. The following block quote amalgamates the lion's share of Williams' allegations on the issue of reliance:

> Previously, [Williams] had been using other electric heating pads . . . from Walmart. However, [Williams] and her son felt those heating pads were cheaply made and unreliable. Given the size and reputation of Amazon as a trustworthy online marketplace, [Williams] and her son believed they could find a better-quality heating pad on Amazon's website that would function more reliably than the ones sold at Walmart. Because Amazon had heavily promoted its own image as a safe and trustworthy company, [Williams] and her son never imagined Amazon would have allowed dangerous products like the Blusmart Heating Pad to be available for sale on its website. Additionally, through their previous experiences using their Amazon accounts to purchase products on Amazon's website, [Williams] and her son were familiar with the robust communication system Amazon maintained with its account holders (including, for example, alerts that a product's price or availability had changed), and believed that if Amazon ever learned the Blusmart Heating Pad was dangerous, then Amazon would conduct a prompt and thorough investigation of that product and, when appropriate, send a similar alert to purchasers of that product and/or completely remove the product from its listings. As a result, [Williams] and her son stopped purchasing heating pads from Walmart,

and instead purchased the Blusmart Heating Pad. . . . [Williams] relied upon Amazon to perform . . . safety-related services[,] [such as vetting the manufacturer and product, as well as warning purchasers of discovered defects,] because [Williams] and her son would not have switched from purchasing heating pads at Walmart to purchasing the Blusmart Heating Pad through Amazon if they had known Amazon was not the safe and reliable marketplace it put itself out to be. [Williams] and her son purchased the [pad] because they believed it would be more reliable than the heating pads sold at Walmart since it was sold on Amazon's website. Amazon guaranteed and promoted the [pad] as being safe and lulled [Williams] and her son—who were unaware [the pad] was coming from an unreliable Chinese manufacturer—into a false sense of security. [Williams] and her son trusted Amazon had confirmed the reliability of the Blusmart Defendants and the safety of the [pad] when they purchased and used the [pad].

(Doc. 47 at ¶¶ 12–13, 55.) Williams also details Amazon's specific safety-related services through the 2019 website post and an undated screenshot from Amazon's website. (*Id.* at ¶¶ 15–17.)

After reviewing these allegations, the Court agrees with Williams that her Complaint plausibly indicates reliance on Amazon's product-safety undertaking. The comments to Restatement Section 324A indicate that a plaintiff can show reliance by indicating that she was induced "to forgo other remedies or precautions against" a risk. Restatement (Second) of Torts § 324A, cmt. e (1965). The Restatement also provides the following example:

A Railroad Company employs B as a watchman at its crossing, to give warning to the public of approaching trains. B goes to sleep in his shanty, and fails to warn of the approach of the train. C, an automobile driver who knows of the usual presence of the watchman, approaches the crossing and, receiving no warning, drives onto the track and is struck and injured by the train. B is subject to liability to C.

*Id.* Standing alone, Williams' allegations that she knew that Amazon was large and had a trustworthy reputation might be insufficient to place her in a similar position to "C." But Williams also alleges that she was familiar with Amazon's robust communication and alert system, and that Amazon publicly promoted itself as a safe company through specific declarations regarding its product-safety efforts. What's more, Williams alleges that she switched heating-pad purveyors and trusted that Amazon had confirmed the pad's reliability because of Amazon's representations.

Viewed as a whole, then, the sum total of Williams' allegations permits the inference that Williams and her son knew of Amazon's product-safety efforts and relied on Amazon to discharge those efforts with reasonable care when they purchased and used the heating pad. At this procedural stage, Williams' allegations plausibly indicate that she made decisions and forewent alternative precautions because of Amazon's product-safety efforts.

Amazon, for its part, attempts to defend against this conclusion with cases such as *Entergy Gulf States, Inc. v. Akrotex, Inc.*, 40 S.W.3d 201 (Tex. App. 2001), and *Skaggs v. Amazon.com, Inc.*, 2021 WL 5917404 (La. App. 1 Cir., Dec. 15, 2021). But Amazon's caselaw is unmoored from the 12(b)(6) standard. *Entergy*, for one, concerned an appeal of a jury verdict, while *Skaggs* arose on summary judgment. The motion-to-dismiss stage requires the Court to not only view all well-pleaded facts as true, but also to view those facts in the light most favorable to the plaintiff and draw all reasonable inferences in her favor. There is a reason, then, that "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.' " *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). Here, drawing all reasonable inferences in Williams' favor, her Complaint makes out more than a speculative claim for relief.

Because the negligent undertaking inquiry is disjunctive—Williams must demonstrate reliance *or* an increased risk of harm—the Court's determination that Williams plausibly pleads an undertaking and reliance is dispositive (Amazon does not contest the second prong of the negligent-undertaking inquiry). Thus, the Court concludes that Williams' Complaint contains sufficient well-pleaded facts to push her negligent undertaking claim over the 12(b)(6) hurdle.

C.      *Did Amazon's Performance of Services Increase Williams' Risk of Harm?*

While Parts IV-A and IV-B resolve this Motion, the Court also notes that Williams plausibly pleads that Amazon's performance increased her risk of harm. For Amazon to have increased Williams' risk of harm, its performance must have resulted in "some change in conditions that increase[d] the risk of harm to the plaintiff over the level of risk that existed before [Amazon] became involved." *Canipe v. Nat'l Loss Control Serv. Corp.*, 736 F.2d 1055, 1062 (5th Cir. 1984) (addressing section 324A of the Restatement (Second) of Torts). Williams, for her part, alleges that Amazon increased her risk of harm by " 'aggressively recruit[ing]' Chinese manufacturers (including the Blusmart Defendants) to sell their unsafe products[.]" (Doc. 53 at 7–8.) Thus, "Amazon's management of its online business was the only reason [Williams] was exposed and introduced to the Blusmart Defendants and their unsafe heating pad in the first place[.]" (*Id.*) Williams also adds that "Amazon created the dangerous environment that it had undertaken to make safe, and despite knowing the Blusmart Defendants were unreliable and their products were unsafe, Amazon intentionally turned a blind eye while it continued to assure its customers that the heating pad and sellers were reliable because Amazon was properly conducting its vetting and monitoring program." (*Id.*) Ultimately, Williams is half right.

At this procedural stage, the Court believes that Williams' allegations concerning Amazon's proactive product-safety efforts permit the plausible inference that Amazon's negligent performance increased her risk of harm. This area of the law is fraught with uncertainty, as "[t]he absence of a clear baseline for the risk-of-harm analysis has led to inconsistent applications of Section 323 [and Section 324A, by extension], even within Texas." *Holcombe v. United States*, 2021 WL 67217, at *11 (W.D. Tex. Jan. 6, 2021) (comparing *Texas Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 285 (Tex. App.—Houston [1st Dist.] 2006, no pet.) with *City*

11

*of Haltom City v. Aurell*, 380 S.W.3d 839, 859 (Tex. App.—Fort Worth 2012, no pet.)). Still, several courts have recognized that the failure to properly conduct a warranted inspection can create a fact issue on summary judgment as to whether the defendant's performance increased the plaintiff's risk of harm. *See e.g.*, *Morris*, 2017 U.S. Dist. LEXIS 105185 at *15; *see Holcombe*, 2021 WL 67217, at *13 (W.D. Tex. Jan. 6, 2021) (reasoning that the Government's failure to reasonably discharge its duties under the background check system could have increased the risk of harm to people shot by a gunman who gained access to firearms via a negligent breakdown in the system). At this procedural stage, then, the Court can read Williams' allegations on Amazon's product-safety efforts to make out a plausible case for an increased risk of harm.

The Court must note, however, that Amazon's alleged recruitment of Chinese manufacturers has no bearing on this conclusion. Amazon's recruitment of Shenzhen-based manufacturers is not a "service that it knew or should have known [was] necessary for [Williams'] protection." *See Torrington*, 46 S.W.3d at 838. The undertaking that rests at the core of Williams' Complaint is Amazon's provision of "a number of safety-related services for the benefit of individuals who use products purchased through Amazon's website." (Doc. 47 at ¶ 14.) That is the undertaking that must increase Williams' risk of harm. Thus, Williams cannot base any increased risk of harm on Amazon's solicitation of Chinese manufacturers; Amazon's recruitment efforts cannot fairly be described as services that it undertook to protect Williams.

V.      **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Amazon's Motion to Dismiss (Doc. 50).

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 7th day of February, 2022.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE