United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSHUA JOHNSON, § § **Plaintiff,** § § v. § § AMAZON.COM, INC., and § COMUSTER, § § **Defendants.** | Civil Case No. 4:22-CV-04086 |

## MEMORANDUM OPINION AND ORDER

This case concerns a non-slip bathmat purchased from a third-party seller on Defendant Amazon.com, Inc.'s ("Amazon") online marketplace. While taking a shower, Plaintiff Joshua Johnson ("Johnson") slipped on the bathmat and sustained serious injuries. Johnson now brings claims for strict liability, negligence, and breach of warranty against Defendant Comuster ("Comuster"),[1] the third-party seller, and a negligent-undertaking claim against Amazon based on Amazon's public statements boasting of its rigorous vetting and product safety programs.

Pending before the Court is Defendant Amazon's Motion to Dismiss the First Amended Complaint. (Dkt. No. 10). For the reasons stated below, the Court **DENIES** Amazon's Motion.

---

[1] Comuster has not yet appeared.

**I.     BACKGROUND**[2]

In January 2022, Johnson purchased a bathmat via Amazon's online marketplace. (*Id.* at 3). The mat at issue was designed, manufactured, and sold by a Chinese corporation—Comuster. (Dkt. No. 8 at 2). Johnson alleges that "[g]iven the size and reputation of Amazon as a trustworthy online marketplace, [he] believed he could find a good-quality non-slip [bathmat] on Amazon's website that would function reliably." (*Id.*).

On October 21, 2022, nine months after purchasing the mat, Johnson "installed the [bathmat] as instructed and used his shower with the [bathmat] on the shower floor." (*Id.* at 9). During Johnson's shower, the bathmat shifted causing him to fall. (*Id.*). Johnson sustained a severe cut on his right arm, which required surgery and a three-day hospital stay. (*Id.*). The incident left Johnson with significant scarring. (*Id.*).

According to Johnson, "Amazon voluntarily undertakes to provide several safety-related services for the benefit of individuals who use products purchased through Amazon's website." (*Id.* at 3). Based on Amazon's safety marketing, Johnson "never imagined Amazon would have allowed dangerous products like the Comuster non-slip [bathmat] to be available for sale on its website." (*Id.*). Johnson also discusses how his experience with Amazon's communication and alert systems led him to believe that if Amazon learned that the bathmat was dangerous, it would investigate, alert him, and/or

---

[2] For purposes of addressing the Motion, the Court accepts all factual allegations in the Complaint as true and views them in the light most favorable to Johnson. *See White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

remove the product from its store. (*Id.*). As support, Johnson identifies various representations made by Amazon to its users, including a post that Amazon published on its website in 2019. (*Id.* at 4–6). That post describes Amazon's $400-million investment in "proactive measures" designed "to ensure products offered are safe, compliant, and authentic." (*Id.* at 4). Those measures include efforts to vet sellers, require safety documentation, scan existing product listings for concerning updates, investigate troubling reports, and notify customers of potential safety issues. (*Id.* at 4–5). Johnson also points to a screenshot from Amazon's website that further details Amazon's product safety and recall efforts. (*Id.* at 6). And with regard to this product, Johnson contends Amazon was on notice of the unreasonably dangerous nature of the Comuster bathmat because of reviews posted on Amazon's website that complain about the bathmat not sticking to shower floors as warranted. (*Id.* at 7–8).

### A. PROCEDURAL HISTORY

Johnson's Original Complaint asserted a strict products liability claim against both Amazon and Comuster, (Dkt. No. 1 at 3–5), and negligence, breach of implied warranty, and breach of express warranty claims against Comuster, (*id.* at 5–7). Amazon initially moved to dismiss the Original Complaint under Rule 12(b)(6), arguing that Texas law foreclosed Johnson's strict liability claim against Amazon because the bathmat was sold by a third party. (*See* Dkt. No. 7 at 5–8) (citing *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 112 (Tex. 2021)). Johnson amended his Complaint and dropped the strict liability claim against Amazon. *Compare* (Dkt. No. 1) *with* (Dkt. No. 8). In Johnson's First

Amended Complaint, he includes a negligent-undertaking claim against Amazon. (Dkt. No. 8 at 13–15).

Amazon now moves to dismiss Johnson's First Amended Complaint under Rule 12(b)(6), arguing that Johnson has not stated a viable negligent-undertaking claim under Texas law for two reasons. (Dkt. No. 10 at 11–25). First, Amazon argues that according to Johnson's alleged facts, Amazon did not assume a duty with regard to Johnson and the bathmat. (*Id.* at 12–19). And second, Amazon argues that even if it had undertaken some duty to Johnson, he fails to plausibly allege that Amazon increased his risk of harm or that Amazon made an express promise on which Johnson detrimentally relied. (*Id.* at 19–25)

**II. LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The defendant, as the moving party, bear the burden of proving that no legally cognizable claim for relief exists. *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL

4

4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether "a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

The court need not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). And review is limited to the complaint's allegations and to the documents attached to a defendant's motion to dismiss to the extent those documents are referenced in the complaint and are central to the claims. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

**III. ANALYSIS**

Johnson asserts a negligent-undertaking claim against Amazon. (Dkt. No. 8 at 13–15). To plead a negligent-undertaking claim under Texas law,[3] Johnson must show that:

(1) Amazon undertook to perform services that it knew of or should have known were necessary for Johnson's protection,

(2) Amazon failed to exercise reasonable care in performing those services, and *either*—

(3a) Johnson relied on Amazon's performance, *or*

(3b) Amazon's performance increased Johnson's risk of harm.

*See e.g.*, *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000). This approach mirrors Section 323 of the Restatement (Second) of Torts. *See Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976) (adopting approach from Restatement (Second) of Torts § 323 (1965)). Amazon argues that Johnson fails to plead (1) an undertaking, (Dkt. No. 10 at 12–19), (3a) reliance, (*id.* at 22–25), or (3b) an increased risk of harm, (*id.* at 20–22). The Court addresses each argument in turn.

**A. DID JOHNSON PLEAD AN UNDERTAKING?**

A plaintiff can establish that a defendant voluntarily undertook a duty in two ways. First, a plaintiff can allege that a defendant "engaged in an affirmative course of action necessary for the protection of [a plaintiff's] person or property[.]" *See Elephant Ins. Co. LLC v. Kenyon*, 644 S.W.3d 137, 152 (Tex. 2022). Second, a plaintiff can allege that a defendant made "express promise[s] to act in the future" for the protection of the

---

[3] Jurisdiction in this case is based on diversity of citizenship. (*See* Dkt. No. 8 at 2). No Party disputes that Texas substantive law to Johnson's negligent-undertaking claim.

6

plaintiff's person or property. *E.g.*, *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 398 (Tex. 1991). Amazon's arguments as to Johnson's undertaking essentially fit into two buckets. First, Amazon argues that the webpage statements and press-release language describing Amazon's product-safety measures cannot establish an undertaking as a matter of law, (Dkt. No. 10 at 13–17), and that Johnson has failed to identify any affirmative acts by Amazon that amounts to an undertaking, (*id.* at 18–19). Second, Amazon argues that Johnson fails to sufficiently allege that Amazon made an express promise to Johnson to act in the future regarding the bathmat. (Dkt. No. 10 at 16–17).

Johnson alleges that "Amazon voluntarily undertakes to provide several safety-related services for the benefit of individuals who use products purchased through Amazon's website." (Dkt. No. 8 at 3). According to Johnson, "Amazon's purported goal in offering these services has been to fully vet the safety and reliability of not just the products being sold on Amazon's website but also the sellers whose products were being sold." (*Id.* at 3–4). Johnson quotes extensively from a 2019 website statement made by Amazon. (*Id.* at 4–5). The 2019 website statement includes, among other things, reference to Amazon's supposed $400 million investment "to protect [Amazon's] store and [its] customers" and "to ensure [that] products offered [on Amazon's website] are safe, compliant, and authentic." (*Id.* at 4). The statement also references a "dedicated global team of compliance specialists that review submitted safety documentation[.]" (*Id.*). Johnson also quotes from Amazon's Help and Customer Service page, which states, among other things, that "Amazon works to protect customers from risks of injury associated with products offered on Amazon by looking into and taking action on

7

reported complaints and incidents[,]"and that "Amazon monitors the products sold on [its] website for product safety concerns."  (*Id.* at 5) (alteration in original).

In response, Amazon argues the statements are mere "promotional material" that provide only "general broad descriptions" of Amazon's product-safety measures.  (Dkt. No. 10 at 14) (citing *Kuentz v. Cole Sys. Grp., Inc.*, 541 S.W.3d 208, 218 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).  Amazon also insists that no Texas state court has imposed a duty under such circumstances.  (*Id.* at 13) (citing *State of Texas v. Am. Tobacco Co.*, 14 F.Supp.2d 956, 973 (E.D. Tex. 1997).  Along those lines, Amazon urges this Court to discount a recent case in which a court *did* find such a duty.  *See Williams v. American Crenova E-Commerce LTD.*, 4:20-CV-01666 (S.D. Tex. Feb. 7, 2022) (Ellison, J.).  Amazon calls that case "an expansive approach to negligent-undertaking claims that is fundamentally inconsistent with Texas precedents." (Dkt. No. 10 at 13); (*see also* Dkt. No. 15 at 4–5).  *Williams* should ignored, Amazon argues, because the case is not binding, (Dkt. No. 10 at 13–14 n.3), and this Court "must assess any extension of Texas law by looking first to the 'decisions of the Texas Supreme Court in analogous cases' and then to 'lower state court decisions,'"  (Dkt. No. 15 at 2) (quoting *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 493 (5th Cir. 2023) (cleaned up)).  A discussion on *Williams* is warranted.

*Williams* concerned a heating pad purchased by the plaintiff's son from a third-party seller via Amazon's online marketplace.  (4:20-CV-01666, Dkt. No. 56 at 1).  At some point after the purchase, the heating pad's electrical component became incredibly hot during the plaintiff's use and she sustained "serious burns near her right hip," for which she was hospitalized.  (*Id.* at 2).  The plaintiff asserted a negligent-undertaking claim

8

against Amazon. (*Id.* at 3). Amazon moved to dismiss under Rule 12(b)(6), arguing the plaintiff failed to plead an undertaking, reliance, or an increased risk of harm. (*Id.* at 4–5). Disagreeing with Amazon, the district court's holdings were threefold.

First, the court concluded that the plaintiff had plead an affirmative undertaking by Amazon for the heating pad and that, therefore, Amazon owed the plaintiff a duty. (*Id.* at 5–8). Crucial to this part of the court's decision was that the plaintiff pleaded that "Amazon voluntarily undertakes to provide a number of safety-related services for the benefit of individuals who use products purchased through Amazon's website." (*Id.* at 6) (internal quotation marks omitted). The plaintiff there also cited Amazon's 2019 website post about its proactive measures to keep its customers safe and its $400 million investment to ensure the same. (*Id.*). Second, the court concluded that the plaintiff relied on Amazon's undertaking. (*Id.* at 9). The court held that this was so because, among other things, the plaintiff alleged that "she was familiar with Amazon's robust communication and alert system, and that Amazon publicly promoted itself as a safe company through specific declarations regarding its product-safety efforts[,]"and that the plaintiff "allege[d] that she switched heating-pad purveyors and trusted that Amazon had confirmed the pad's reliability because of Amazon's representations." (*Id.*). And third, the court concluded that Amazon's undertaking increased the plaintiff's risk of harm. (*Id.* at 12). While recognizing that this area of the law was "fraught with uncertainty," (*id.* at 11), the court found that the plaintiff's allegations concerning Amazon's "product-safety efforts . . . ma[d]e out a plausible case for an increased risk of harm[,]" (*id.* at 12).

9

Although *Williams* is analogous to this case, this Court will make its own "*Erie* guess" because the legal issues before the Court have not been answered by the Supreme Court of Texas. *See McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745–76 (5th Cir. 2019) ("In instances where the State's highest court has not spoken on the direct question, federal courts are required to make an *Erie* guess and determine, in their best judgment how the State's highest court would resolve the issue if presented with the same case." (cleaned up)).[4]

After a review of the relevant Texas law and taking the allegations in the Complaint as true, the Court finds that Amazon's product-safety program constitutes an undertaking. No Texas state court has directly addressed a product-safety scheme quite like the one alleged in this case in the negligent-undertaking context. Still, Texas law is clear that an undertaking is an action which a defendant "should recognize as necessary for the protection of [another's] person or things[.]" *Colonial Sav. Ass'n*, 544 S.W.2d at 120.

This case is more like *Williams*, and less like other recent cases in which the defendant *did not* commit an undertaking. *See, e.g., Elephant Insurance Company, LLC v.*

---

[4] An *Erie* guess is based on:
  (1) decisions of the Texas Supreme Court in analogous cases,
  (2) the rationales and analyses underlying Texas Supreme Court decisions on related issues,
  (3) dicta by the Texas Supreme Court,
  (4) lower state court decisions,
  (5) the general rule on the question,
  (6) the rulings of other states to which Texas courts look when formulating substantive law, and
  (7) other available sources, such as treatises and legal commentaries.
*Civelli,* 57 F.4th at 493.

10

*Kenyon*, 644 S.W.3d 137 (Tex. 2022). In *Kenyon,* the Supreme Court of Texas was asked to review a negligent undertaking claim brought by an insured plaintiff who was involved in a car accident. *Id.* at 140. After the accident, the plaintiff's "spouse arrived at the accident scene and began taking photos." *Id.* "While the spouse was on the side of the road engaging in that activity, he was struck by another vehicle and killed." *Id.* "The [plaintiff] allege[d] her automobile insurer had 'instructed' her to take photos[, which] she had related . . . to her spouse, who was complying when the other driver hit him[.]" *Id.* The plaintiff brought a wrongful-death suit against her insurance company asserting a negligent-undertaking theory. *Id.* at 141. The Supreme Court of Texas held that the plaintiff's negligent undertaking claim failed as a matter of law because, *inter alia*, "answering a phone call and guiding an insured through the initial steps of the insurance claims process is not an action 'necessary' to 'protect' the insureds or their property from 'harm.'" *Id.* at 151–52 (quoting *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 241 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). This case is much different.

Here, at least according to Johnson's pleadings which the Court must take as true, Amazon's product-safety efforts are more particularized. According to Amazon's 2019 webpage statements, which Johnson incorporates into his Complaint, Amazon's safety "measures begin when a seller attempts to open an account." (Dkt. No. 8 at 4). The seller is vetted, which includes "a number of verifications and the use of proprietary machine learning technology that stops bad actors before they can register or list a single product in [its] store." (*Id.*) (cleaned up). And all products offered for sale on Amazon's online marketplace must not only comply with "applicable laws and regulations" but also

11

Amazon's own "policies." (*Id.*). Once a product is available on Amazon's online marketplace, Amazon also continuously scans its "product listings and updates to find products that might present a concern." (*Id.*). "Every few minutes, [Amazon's] tools review the hundreds of millions of products, scan the more than five billion attempted daily changes to product detail pages, and analyze the tens of millions of customer reviews that are submitted weekly for signs of a concern and investigate accordingly." (*Id.* at 4–5). Amazon also "provide[s] a number of ways for regulatory agencies, industry organizations, brands, customers, and [Amazon's] customer service teams to report safety issues." (*Id.* at 5). "When [Amazon] receive[s] these reports, [it] move[s] quickly to protect customers, [by] remov[ing] unsafe products from [its] store[.]" (*Id.*).

Amazon insists that these statements are mere promotional material that provide general and broad descriptions of Amazon's product-safety measures. (Dkt. No. 10 at 14). The Court disagrees. While the statements certainly promote Amazon as a safe company, they go far beyond that by describing with sufficient detail the processes through which Amazon vets sellers and their products.

According to Amazon's own statements, it "offers customers hundreds of millions of items[.]" (Dkt. No. 8 at 4). Given the sheer volume of items offered, Amazon should recognize its safety efforts are "necessary for the protection of" its customer base. *Colonial Sav. Ass'n*, 544 S.W.2d at 120. Therefore, the Court holds that Amazon's safety-related

efforts, as alleged by Johnson in the Complaint, constitute an affirmative course of action.[5] Johnson's Complaint sufficiently pleads an undertaking under Texas law.

### B. DID JOHNSON PLEAD RELIANCE?

Amazon also argues that Johnson's Complaint fails to allege that he relied on Amazon's statements to his detriment when purchasing or using the bathmat. (Dkt. No. 10 at 22). By Amazon's estimation, the allegations made by Johnson are of the type that "Texas courts have held cannot establish actual reliance for a negligent-undertaking claim." (*Id.*) (cleaned up). To support its argument, Amazon points to a recent state court case—*Freyer v. Lyft, Inc.*, 639 S.W.3d 772, 790 (Tex. App.—Dallas 2021, no pet.).

In *Freyer*, the plaintiff sustained injuries attempting to exit a vehicle driven by a Lyft contractor who became unconscious while operating the vehicle. *Freyer*, 639 S.W.3d at 777–78. The plaintiff sued Lyft for negligence under the theory that it had negligently undertaken the background screen for the driver. *Id.* at 778–79. As to her reliance, the plaintiff claimed that "she chose to ride with Lyft because they advertised themselves as the "safe option and that they go the extra mile for safety." *Id.* at 790 (cleaned up). The Dallas Court of Appeals found that the statements were conclusory because the plaintiff "did not identify any specific advertisement or one that described the background screening services." *Id.* And, although Lyft's website contained language the plaintiff used to show reliance, the plaintiff never "stated she visited the website prior to the

---

[5] Because the Court has determined that Amazon's actions constitute an affirmative course of action, it need not address Amazon's argument that Johnson fails to allege that Amazon made an express promise to Johnson to act in the future regarding the bathmat. (Dkt. No. 10 at 16–17).

13

accident or that she relied on Lyft's performance of background screenings prior to choosing Lyft." *Id.*

*Freyer*'s facts are distinguishable from this case. Here, Johnson alleges that he was "familiar with the robust communication system Amazon maintained with its account holders[,]" namely its vetting processes with sellers and their products, (Dkt. No. 8 at 3–4). Johnson also alleges that he relied on Amazon's statements regarding safety and product vetting when he purchased the Comuster bathmat from Amazon, a purportedly "safe and reliable marketplace[.]" (*Id.* at 14). He further alleges that he chose the Amazon bathmat over others precisely "because it was sold on Amazon's website." (*Id.* at 15). According to Johnson's quotes of Amazon's statements, Amazon has a "dedicated global team of compliance specialists that review submitted safety documentation, and [Amazon] ha[s] additional qualification requirements that sellers must meet to offer products" on Amazon's online marketplace. (*Id.* at 4). Accepting Johnson's allegations as true, which the Court is obligated to do at this stage, the Court is satisfied that Johnson has sufficiently pleaded that he relied on Amazon's undertaking.[6]

## IV. CONCLUSION

In sum, the allegations contained in Johnson's First Amended Complaint—taken as true—establish that (1) Amazon's product-safety program constitutes an undertaking

---

[6] As stated above, to satisfy the third element of a negligent-undertaking claim under Texas law, Johnson may show either that he relied on Amazon's performance or Amazon's performance increased his harm. *Stutzman*, 46 S.W.3d at 838–39. Since the Court has found that Johnson has sufficiently pleaded that he relied on Amazon's performance, the Court need not address the alternative—whether Johnson pleaded that Amazon's performance increased his harm.

and (2) Johnson relied on Amazon's undertaking in purchasing the Comuster bathmat. Accordingly, the Court **DENIES** Amazon's Motion to Dismiss.  (Dkt. No. 10).

    It is SO ORDERED.

    Signed on March 30, 2024.

                                                             _____
                                                              DREW B. TIPTON
                                                   **UNITED STATES DISTRICT JUDGE**